LEIATO of Fagaitua, Plaintiff

v.

SATELE & TAPOPO of Alao, Defendants

No. 68-1948

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: in Alao]

March 30, 1948

A. A. MORROW, *Chief Justice;* PULETU, *District Judge;* and MULI, *District Judge.*

DECISION

Heard at Fagatogo, Tutuila, American Samoa, March 17, 1948.

Pele for Leiato; Faga for Satele and Tapopo.

MORROW, *Chief Justice.*

On November 24, 1947 Satele and Tapopo offered certain land located in the village of Alao for registration as their property. They filed a survey of the land along with the offer for registration. Leiato of Fagaitua objected to such proposed registration on December 4, 1947, claiming that the land was the property of the Leiato title. Hence this litigation. Sec. 905 of the A. S. Code. Satele and Tapopo claimed that the property was the communal family land of their families.

The evidence showed conclusively that the land offered for registration has been used by the Mormon Church of Alao for at least 36 years for parsonage purposes. There was evidence from which the court might very well have concluded that it was devoted to such use from a period antedating the establishment of the Government in 1900. However, in view of the fact that the land has unquestionably been used by the Mormon Church for parsonage purposes for at least 36 years it is immaterial whether such use began prior to the establishment of the Government in American Samoa or afterwards.

Satele and Tapopo introduced evidence to the effect that their predecessors in title had given authority to the Mormon Congregation of Alao to use the land for parsonage purposes. Leiato's testimony was to the effect that Leiato Tugalesala, his blood grandfather gave permission to the

342

Mormon Congregation at Alao to make use of the land for the same purpose in 1902. Relative to this point Leiato testified in part:

Q. "When the court was out there it saw two fales and two cook houses, who are living in those fales at the present time?
A. The Mormon Missionary.
Q. Have any other Mormon Missionaries other than the present Mormon missionary lived there?
A. The policy of the Mormons whenever a Mormon Missionary's time is up then he leaves the village and another one came in and these two were the ones that asked permission of my father.
Q. Did your father give it?
A. Yes my father gave them permission to give this land for the use by the Mormon Missionary like the other part of my land my father gave that land to the L. M. S. Pastor to live.
Q. When did your father give permission for the Mormon Missionary to live on the land?
A. That is in the year 1902 I remember very well when they asked permission and my father told them wherever the Mormon Missionary want to live give it to them.
Q. Did your father tell you he had given permission for the Mormon missionary to live on the land?
A. No my father did not tell me but I heard it myself I was old enough myself and I have seen those persons who asked permission."

It further appears from the testimony that such permission was given after consultation by Leiato Tugalesala with his council, such council being composed of the chiefs from Masausi and Sailele. It has been the practice ever since the land was devoted to the use of the Mormon missionary for the succeeding Mormon missionary to occupy the land. It was roughly estimated by one witness that about 30 different Mormon missionaries had occupied the premises, one after the other.

There are two living fales standing on the land at the present time as well as two cook houses, all used by the present Mormon missionary at Alao. These fales and cook houses were put up by the Mormon congregation for the

343

missionary. It was estimated by one witness that at least a half dozen different fales had been put up on the land at different times by the congregation for the use of the successive Mormon missionaries.

While there is a conflict in the evidence, it is our opinion that it clearly preponderates in favor of the view that the land is the property of the Leiato title, subject to the right of the Mormon congregation of Alao to continue to use the same for parsonage purposes. In addition to putting up fales and cook houses upon the land in reliance upon the permission given by Leiato Tugalesala, the Mormon congregation has filled in the sea-side of the premises with stone so as to make them sufficiently level for fales to be built thereon. The missionaries have put in plantations on the land and used the products thereof ever since it was set aside for the use of the Mormon missionaries.

█ We believe from the evidence that there was a common-law dedication of the land involved in this case by Leiato Tugalesala for the use of the Mormon missionary serving the Church of that faith at Alao.

"By analogy, rather than in strict conformity to the common-law principle, the theory of dedication has been invoked to uphold gifts for pious and charitable uses, as for churches, schools, and cemeteries, though their benefits are enjoyed by a certain class, and not by the public at large, some of the specific applications of this analogy being found in cases sustaining dedications for the residence of a minister of a particular religious congregation, for a church or for a religious purpose, for a camp ground for holding religious meetings, for a cemetery, and for a public school."

16 Am.Jur. p. 351 par. 7. In *McKinney v. Griggs*, 5 Bush (Ky) 401, 96 Am. Dec. 360 the Supreme Court of Kentucky recognized a dedication for the residence of a minister of a particular church. The doctrine of dedication of

land for religious and pious uses is approved in 26 C.J.S. 57.

■ However the legal effect of dedication of land is not to deprive the owner of his title therein. "The public acquires only an easement or such an interest in the land as is necessary for its enjoyment of the use. The fee ordinarily remains in the proprietor, the public holding the easement in trust." 16 Am.Jur. 402. II Tiffany on Real Property (2nd Ed.) p. 1884 is to the same effect.

■ "No particular form or ceremony is necessary to the validity of a common law dedication. No writing or conveyance is necessary to render the dedication effective, as the statute of frauds has no application to the doctrine of dedication. All that is necessary to the validity of a dedication is the assent and intent of the owner to appropriate it to public use; and any words or any act or acts clearly manifesting an intent to dedicate, are sufficient. Dedications have been established in every conceivable way by which the intent of the dedicator could be evinced." 26 C.J.S. 65. In order however that a dedication may be effective there must be acceptance. 16 Am.Jur. 377. There was clearly an acceptance of the offer of Leiato Tugalesala to dedicate the land involved in this case. The putting of stone on the sea-side of the land so as to level it up in order that fales might be built upon it; the erection of fales and cook houses and putting in plantations thereon; and the occupation of it for parsonage purposes for many, many years by the Mormon missionaries constituted an implied acceptance of the offer to dedicate. Under these circumstances, the present Mormon missionary serving the Mormon Congregation at Alao and his successors have the right to continue to occupy the dedicated premises and use the same for parsonage purposes.

Accordingly it is ORDERED, ADJUDGED AND DE-CREED that the land offered for registration as shown in the survey accompanying such offer be registered as the communal family land of the Leiato title subject to the right of the Mormon missionary serving the Mormon Congregation at Alao, and his successors, to continue to occupy and use it for parsonage purposes. The Registrar of Titles will be so advised.

Since the cost of surveying the land was borne by Satele and Tapopo and the benefit thereof will accrue to Leiato, it is equitable and that Leiato pay the costs in this case. Such costs are assessed at $25.00, the same to be paid in 30 days.